# EXHIBIT A

# SETTLEMENT AGREEMENT AND GENERAL RELEASE

The Settlement Agreement and General Release (hereinafter referred to as the "Agreement") is by and between Daniel Mayer ("Mayer") on the one hand, and Waste Management of Wisconsin, Inc. and each of its related corporations, parents, subsidiaries and affiliates, and each of their respective current and former officers, employees, trustees, directors, attorneys, insurers, agents, successors and assigns, individually and in their representative capacities, (hereinafter collectively referred to as "WMWI" or "the Company") on the other hand. Plaintiff and the Company will be collectively referred to as the "Parties" and each of Mayer and WMWI are referred to as a "Party."

**WHEREAS**, Mayer, a former WMWI District Fleet Manager filed a Complaint alleging that WMWI violated the Fair Labor Standards Act, 29 U.S.C. § 216(b) ("FLSA"), and corresponding Wisconsin Minimum Wage laws in the United States District Court for the Eastern District of Wisconsin as Case Number 21-cv-984, and entitled, *Mayer v. Waste Management of Wisconsin, Inc.* (the "Lawsuit");

**WHEREAS,** Mayer previously was employed by WMWI as the Second-Shift District Fleet Manager at WMWI's Menominee Falls location from approximately October 2020 through May 2021;

**WHEREAS,** Mayer, as part of the Lawsuit, alleged that he was misclassified as an exempt employee by WMWI in his role as a District Fleet Manager;

**WHEREAS** the Lawsuit includes claims for WMWI's alleged failure to properly pay Mayer overtime compensation and for other relief;

**WHEREAS** WMWI denies any liability or wrongdoing of any kind associated with any and all claims alleged in the Lawsuit, and, for any purpose other than settling the Lawsuit, denies the District Fleet Manager position is non-exempt position, and further denies that this action was ever appropriate for collective or class-wide treatment. WMWI contends, among other things, that it complied at all times with all applicable state and federal laws.

**AND WHEREAS**, pursuant to the FLSA and relevant law, Court approval of this Settlement is required to effectuate the Settlement, and the Settlement will not become operative until the Court grants approval of it, the Settlement becomes final, and the Effective Date occurs.

**NOW THEREFORE**, in consideration for the foregoing and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by each party to the other, IT IS HEREBY AGREED, by and between the undersigned, subject to the approval of the Court and the other conditions set forth herein, that Mayer's claims as described herein against WMWI shall be settled, compromised, and dismissed, on the merits and with prejudice, in the manner and upon the terms and conditions set forth below.

IT IS THEREFORE AGREED THAT:

1.  **Recitals**: The Parties acknowledge that all of the "WHEREAS" clauses preceding paragraph 1 are true and correct and are incorporated herein as material parts of this Agreement.

2.  **Court Approval and Dismissal of Lawsuit.** Within ten (10) calendar days after execution of this Agreement by the Parties, Mayer and WMWI shall file a Joint Motion for Approval of Settlement and any other documentation necessary to obtain the Court's approval of this Agreement and dismissal of the Lawsuit, with prejudice. The Parties will cooperate and take all necessary steps to effectuate judicial approval of this Motion. Mayer agrees that he will not seek and is not entitled to any attorneys' fees or costs associated with the Lawsuit other than as specifically provided in this Agreement.

3.  **Settlement Payment**. In consideration for Mayer's agreement and full compliance with all of the terms and conditions set forth herein, including but not limited to the general waiver and release of claims, WMWI agrees to pay the gross amount of **Thirty-Five Thousand Dollars and Zero Cents** ($35,000.00) (the "Settlement Payment"), pending full satisfaction of all conditions precedent listed below:

    a.  WMWI shall issue the Settlement Payment upon: (i) execution of this Agreement by Mayer; (ii) approval of this settlement by the Court; (iii) dismissal of Mayer's claims with prejudice by the Court; (iv) execution and delivery to WMWI's counsel of an IRS Form W-9 signed by Mayer; and (v) execution and delivery to WMWI's counsel of an IRS Form W-9 signed by Mayer's attorneys.

    b.  The Settlement Payment is allocated as follows: (i) a gross amount of Six Thousand Dollars ($6,000.00) allocated to Mayer as unpaid wages, less required taxes and withholdings; (ii) a gross amount of Six Thousand Dollars ($6,000.00) allocated to Mayer as liquidated damages, not subject to taxes or withholding; and (iii) Twenty-Three Thousand Dollars ($23,000.00) allocated to Mayer's attorneys for attorney fees and costs associated with the representation of Mayer's claims throughout the Lawsuit. The Settlement Payment and allocation should not be construed as an admission, either explicitly or implicitly, by WMWI that Mayer is or was in fact entitled to any such damages, and Mayer acknowledges that no such monies are owed. Payment of the Settlement Payment shall be made in the manner set forth in paragraphs 3(c) and 3(d) below.

    c.  Within ten (10) calendar days after satisfaction of all the events in paragraph 3(a) above, WMWI will issue the following

        i.  One check in the amount of Twenty-Three Thousand Dollars ($23,000.00) made payable to Ademi, LLP (the "First Check"). The monies paid by the First Check are allocated for Mayer's attorneys' fees and costs. No taxes will be withheld from the First Check. WMWI will issue a Form 1099 to Ademi, LLP for the payment of monies reflected in the First Check. WMWI will issue a Form 1099 to Mayer for the amount paid to Mayer's attorneys in the First Check.

ii. One check in the gross amount of Six Thousand Dollars ($6,000.00) (the "Second Check") made payable to Daniel Mayer, less all required taxes and withholdings from wages. WMWI will issue a Form W-2 to Mayer for the amount paid in the Second Check.

iii. One check in the amount of Six Thousand Dollars ($6,000.00) made payable to Daniel Mayer (the "Third Check"). The monies paid by the Third Check are allocated to Mayer as liquidated damages. No taxes will be withheld from the Third Check. WMWI will issue a Form 1099 to Daniel Mayer for the amount paid in the Third Check.

d. The Settlement Payment paid pursuant to this paragraph 3 is in full settlement of all claims, including but not limited to, all claims now pending, or which could have been brought in the Lawsuit. Mayer acknowledges and agrees that no consideration, other than as set forth in this Agreement has been or will be furnished.

4. **General Release of Claims**. In consideration of the mutual obligations under this Agreement, Mayer, his heirs, executors, administrators, partners, agents, servants, employees, legal representatives, successors, assigns, and affiliates (collectively referred to as the "Releasor") hereby remise, release, acquit, satisfy, and forever discharge Waste Management of Wisconsin, Inc., and each of its predecessors, successors, assigns, parents, subsidiaries, affiliates, officers, directors, and attorneys of each of those entities and parties, (collectively referred to as the "Companies"), and all of the Companies' officers, directors, attorneys, heirs, executors, administrators, partners, agents, servants, employees, insurers, legal representatives, and assigns of the Companies (collectively with the Companies referred to as "Releasees"), of and from the following:

a. any and all known and unknown claims Releasor has ever had, now has, or may now have against the Releasees including, without limitation, any claims based upon wrongful or tortious termination, public policy or related matters, implied or express employment contracts and/or estoppel; allegations of discrimination and/or retaliation under Title VII of the Civil Rights Act of 1964, The Civil Rights Act of 1866, The Rehabilitation Act of 1973, the Civil Rights Act of 1991, the Americans with Disabilities Act of 1991, the Family and Medical Leave Act, the Employee Retirement Income Security Act, The Worker Adjustment and Retraining Notification Act, and any other federal, state, or local statute or regulation regarding discrimination in employment or the termination of employment; any claims or allegations brought under the Fair Labor Standards Act, the Equal Pay Act, the Wisconsin Fair Employment Act, The Wisconsin Employee's Right-to-Know Law, the Wisconsin Family and Medical Leave Law, Wisconsin wage and hour laws, the Wisconsin Wage Payment Act, the Wisconsin Business Closing Law, statutes, and any other federal or state statute or regulation for non-payment of wages, bonuses, commissions or other compensation; and for libel, slander, breach of contract, breach of the implied covenant of good faith and fair dealing, assault, battery, intentional infliction of emotional distress, tort or any other theory under the common law of any state or federal common law;

3

b. this paragraph 4 does not apply to any vested benefits or to any claims that arise after the Effective Date of this Agreement, or to any claims that controlling law clearly states cannot be released by agreement.

c. although nothing in this Agreement prevents Mayer from filing a charge or complaint with the Equal Employment Opportunity Commission, the National Labor Relations Board, or any other federal, state or local agency charged with the enforcement of any employment laws, Mayer understands and agrees that by executing this Agreement, Mayer voluntarily waives any right that he may have had to monetary recovery based on claims asserted in such charges or complaints.

d. Likewise, as of the Effective Date, WMWI agree to release and discharge Mayer from any and all claims which WMWI may have against Mayer, including any and all claims arising out of and/or in any way related to Mayer's employment with WMWI, whether now known or unknown, contingent or vested, whether anticipated or unanticipated, asserted or unasserted, up to the Effective Date.

5. **Tax Responsibilities**. Mayer agrees that he is solely responsible for his individual portion of any and all federal, state or local taxes that are due as a result of any payments made to Mayer or Mayer's counsel under this Agreement. Mayer further acknowledges and agrees to indemnify and hold harmless WMWI in the event that any federal, state, or local taxing authority asserts any claim for liability against Mayer based upon payment of these sums by WMWI, including but not limited to: unpaid taxes; failure to withhold taxes; penalties; interest or other sums that may become due to any taxing authority. WMWI makes no representations or warranties about the tax consequences of any monies paid pursuant to this Agreement.

6. **Other Actions.** Mayer represents that other than the Lawsuit, Mayer has no suits, claims, charges, complaints or demands of any kind whatsoever currently pending against WMWI or the Companies with any local, state, or federal court or any governmental, administrative, investigative, civil rights or other agency or board. Mayer covenants and agrees never, individually or with any person or in any way, to commence, join, prosecute or cause to be commenced or prosecuted against WMWI any action or other proceeding based upon any claim, demand, cause of action, obligation, damage, or liability that occurred or arose at any time prior to and including the date of Mayer's execution of this Agreement, or that is the subject of this Agreement. Mayer further agrees that if any person, organization or other entity should bring a claim against WMWI involving any matter described herein, Mayer will not accept any individual or personal relief in any such action.

7. **No Assignment.** The Parties represent and warrant that no person other than the signatories hereto had or has any interest in the matters referred to in this Agreement, that the Parties have the sole right and exclusive authority to execute this Agreement, and that the Parties have not sold, assigned, transferred, conveyed, or otherwise disposed of any claim, demand or legal right which is the subject of this Agreement.

8. **Confidentiality.**

4

4895-9131-6535.2 / 046554-1455

a       In consideration of the obligations under this Agreement, Mayer agrees that this Agreement, the terms and conditions hereof, and the underlying facts and circumstances of the claims alleged in the Lawsuit are strictly, and shall forever remain, confidential, and that he, nor his respective heirs, agents, executors, administrators, attorneys, legal representatives, directors, officers, and assigns shall disclose or disseminate any information concerning any such terms to any third person(s), including, but not limited to, representatives of the media or former employees of WMWI, under any circumstances, except that he may disclose the terms of this Agreement to his attorneys, accountants, tax advisors and other similar professionals or the Internal Revenue Service, bank regulators or other appropriate federal or state agencies ("Third Party"). Any Third Party to whom such disclosure is made shall agree in advance to be bound by the terms of this paragraph. If Mayer is required to disclose this Agreement, its terms or underlying facts pursuant to court order and/or subpoena, then he shall so notify WMWI, in writing via facsimile or overnight mail, within 24 hours of receipt of such court order or subpoena, and simultaneously provide a copy of such court order or subpoena. The notice shall comply with Notice Requirements of paragraph 9 below.

b       The Parties acknowledge and agree that the terms of paragraph 8(a) are a material inducement for the execution of this Agreement. Any actual or threatened disclosure or dissemination, other than as described above in paragraph 8(a), of this Agreement, the terms and conditions hereof, and/or the underlying facts and circumstances of the claims alleged in the Lawsuit, will be regarded as a breach of this Agreement and a cause of action shall immediately accrue for damages and injunctive relief.

c       Mayer further acknowledges and agrees that, as of the date he has executed this Agreement, he and/or his respective heirs, agents, executors, administrators, attorneys, legal representatives, directors, officers, and assigns, have not disclosed or disseminated any information concerning this Agreement, the terms and conditions hereof, and the underlying facts and circumstances of the claims alleged in the Lawsuit to any third person(s), including, but not limited to, representatives of the media or current or former employees of WMWI, including to under any circumstances. This acknowledgment does not apply to his attorneys, accountants, or tax advisors.

9.      **Notice Requirements:** Each notice ("Notice") provided for under this Agreement, must comply with the requirements as set forth in this paragraph. Each Notice shall be in writing and sent by depositing it with a nationally recognized overnight courier service which obtains receipts (such as Federal Express or UPS Next Day Air), addressed to the appropriate party (and marked to a particular individual's attention, if so indicated) as hereinafter provided. Each Notice shall be effective upon being so deposited, but the time period in which a response to any notice must be given or any action taken with respect thereto shall commence to run from the date of receipt of the Notice by the addressee thereof, as evidenced by the return receipt. Rejection or other refusal by the addressee to accept or the inability to deliver because of a changed address of which no Notice was given shall be deemed to be the receipt of the Notice sent. Any party shall have the right from time to time to change the address or individual's attention to which notices to it shall be sent by giving to the other party at least ten (10) days prior written notice thereof. The Parties' addresses for providing Notices hereunder shall be as follows:

5

**Daniel Mayer c/o**
Ben Slatky
Ademi LLP
3620 E Layton Ave #103
Cudahy, WI 53110
bslatky@ademilaw.com

**Waste Management of Wisconsin, Inc.**
John A. Ybarra
Matthew J. Ruza
Littler Mendelson, P.C.
321 N. Clark Street, Suite 1000
Chicago, IL 60654
mruza@littler.com

  10. **Mutual Non-Disparagement:** Mayer agrees that neither he nor anyone acting on his behalf will make any derogatory or disparaging statement about WMWI, its officers, directors, partners, agents, insurers, servants, employees, legal representatives, parent, successors, assigns, subsidiaries, divisions and affiliates, to any individual or entity, including, but not limited to, WMWI customers, vendors, or the media, nor directly or indirectly take any action which is intended to embarrass any of them. For purposes of this provision, a disparaging statement is any communication, oral or written, which would tend to cause the recipient of the communication to question the business condition, integrity, competence, fairness, or good character of the person to whom, or entity to which, the communication relates. As to any inquiries concerning the Action, Mayer agrees to respond only that "the matter has been resolved." Likewise, WMWI's officers and directors will not make any derogatory or disparaging statement about Mayer, nor authorize any of their agents to make such statements about Mayer.

  11. **Prevailing Party:** In the event that it shall be necessary for any party to this Agreement to institute legal action to enforce any of the terms and conditions or provisions contained herein, or for any breach thereof, the prevailing party shall be entitled to costs and reasonable attorney's fees, including all costs and attorney's fees related to demonstrating the amount and/or reasonableness of such fees.

  12. **Opportunity to Consult with Counsel:** The Parties hereby represent and acknowledge that they have been provided with an opportunity to discuss and review the terms of this Agreement with an attorney before signing it and that they are aware of its contents and are freely, knowingly, and voluntarily signing this document in exchange for the benefits provided herein. If any fact with respect to which this Agreement is executed is found hereafter to be other than, or different from, the facts now believed by Mayer to be true, Mayer expressly accepts and assumes the risk of such possible difference in fact and agrees that this Agreement shall be and remain effective notwithstanding such difference in fact.

  13. **Revocation:** Mayer understands and acknowledges that this Agreement shall not become effective or enforceable until approval of this settlement by the presiding judge in the

6

4895-9131-6535.2 / 046554-1455

Case 2:21-cv-00984-BHL Filed 11/14/22 Page 7 of 9 Document 38-1

Lawsuit in Case Number No. 21-cv-984 pending in United States District Court for the Eastern District of Wisconsin.

14. **No Further Employment:** Mayer agrees never to reapply for employment with WMWI, its officers, directors, partners, agents, insurers, servants, employees, legal representatives, parent, successors, assigns, subsidiaries, divisions and affiliates. In the event that Mayer is ever mistakenly employed by WMWI, its officers, directors, partners, agents, insurers, servants, employees, legal representatives, parent, successors, assigns, subsidiaries, divisions and affiliates, Mayer agrees to have his employment terminated with no resulting claim or cause of action against WMWI, its officers, directors, partners, agents, insurers, servants, employees, legal representatives, parent, successors, assigns, subsidiaries, divisions and affiliates.

15. **Neutral Reference:** WMWI agrees to direct any third-party inquiries about Mayer's employment with WMWI to The Work Number (www.theworknumber.com or 1-800-367-2884; Employer Code 12520); the only information that will be provided by The Work Number is Mayer's first and last dates of employment and Mayer's last job title.

16. **Binding Nature of Agreement:** This Agreement shall be binding upon each of the Parties and upon their respective heirs, administrators, representatives, executors, successors and assigns, and shall inure to the benefit of each party and to their respective heirs, administrators, representatives, executors, successors, and assigns.

17. **Governing Law and Jurisdiction:** This Agreement shall be deemed to be made and entered into in the State of Wisconsin, and shall in all respects be interpreted, enforced and governed under the laws of Wisconsin, without giving effect to the conflict of laws principles. The Parties expressly consent to the exclusive jurisdiction and exclusive venue of the United States District Court for the Eastern District of Wisconsin, or, if that Court refuses jurisdiction or deems venue to be improper, in any Court of competent jurisdiction in Milwaukee, Wisconsin.

18. **Interpretation:** The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the Parties. This Agreement has been negotiated by and between attorneys for the Parties and shall not be construed against the "drafter" of the Agreement. If any portion or provision of this Agreement (including, without implication of limitation, any portion or provision of any section of this Agreement) is legally determined to be unenforceable, the remainder of this Agreement shall not be affected by such determination and shall be valid and enforceable to the fullest extent permitted by law and said unenforceable portion or provision shall be deemed not to be a part of this Agreement. To the extent any provision herein relates to the release (paragraph 4, above) or dismissal provisions (paragraph 2 above) is deemed to be illegal, invalid, or unenforceable, the parties agree to amend the relevant provision[s] to comply with the applicable law or rule and to fully incorporate the revised or amend provision[s] into this Agreement.

19. **Modification of Agreement:** This Agreement may not be amended, revoked, changed, or modified in any way, except in writing executed by all Parties. The parties agree not to make any claim at any time or place that this Agreement has been orally modified in any respect

whatsoever. No waiver of any provision of this Agreement will be valid unless it is in writing and signed by the party against whom such waiver is charged.

20. **Selective Enforcement:** The Parties agree that the failure of any party to enforce or exercise any right, condition, term or provision of this Agreement shall not be construed as or deemed to be a waiver or relinquishment thereof, and the same shall continue in full force and effect.

21. **Entire Agreement:** This Agreement sets forth the entire agreement between the Parties hereto, and fully supersedes any and all prior agreements or understandings, both written and oral among the Parties hereto pertaining to the subject matter hereof, except that Mayer remains bound by any Loyalty Agreement he signed as a condition of employment with WMWI. The Parties hereto are not relying on any representation or promise not set forth herein in executing this Agreement.

22. **Headings:** The headings of the provisions herein are intended for convenient reference only, and the same shall not be, nor be deemed to be, interpretative of the contents of such provision.

23. **Signatures in Counterparts:** This Agreement may be executed in counterparts, and each counterpart, when executed, shall have the efficacy of a signed original. The Parties agree that facsimile signatures shall be treated as original signatures. Such counterparts shall together constitute one and the same document.

24. **Copy of Agreement Valid:** The Parties agree that executed copies of this Agreement shall be valid and binding, in the event the original executed counterparts to the Agreement are missing.

25. **Contingent on Approval of Settlement by Court:** Mayer understands and acknowledges that this Agreement shall not be effective or enforceable until approval of this settlement by the presiding judge in the Lawsuit for Case Number 21-cv-984 pending in United States District Court for the Eastern District of Wisconsin.

**IN WITNESS WHEREOF,** this Agreement has been executed by the Parties as of the Effective Date.

_____
Daniel Mayer
Dated: 11-11-22

Waste Management of Wisconsin, Inc.

_____
By: Kimberly Gee Stith, VP & GC - Employment
Its:

8

4895-9131-6535.2 / 046554-1455